IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 1:20-cv-02705-MDB

JOHN HEIKKILA

 Plaintiff,

v.

KAHR FIREARMS GROUP

 Defendant.

---

# ORDER

---

 This matter is before the Court on Defendant's Motion for Relief From an Order Pursuant to Rule 60 of the Federal Rules of Civil Procedure (["Motion"] Doc. No. 72.) Plaintiff has not filed a response, but the Court finds none is required.[1] For the reasons described herein, the Motion is **DENIED**.

## BACKGROUND

 This products liability action concerns a firearm that discharged in the bathroom stall of a Cinemark Movie Theater in Colorado Springs, Colorado, on August 12, 2018. (*See* Doc. No. 61 at 3; Doc. No. 66 at 2.) The facts surrounding this incident are detailed in the order that is the subject of this Motion. (["Order"] Doc. No. 71.) The Order dismissed Plaintiff's design defect claim but held that the manufacturing defect claim survived Defendant's summary judgment

---

[1] Defendant has informed the Court that Plaintiff's counsel may have passed away in the interim. Concurrent with this Order, the Court is setting a status conference to determine next steps.

motion. (*Id.*) With this Motion, Defendant asks the Court to reconsider its decision, "relieve Defendant from that Order…and…grant summary judgment … in its entirety." (Doc. No. 72 at 1-2.)

## LEGAL STANDARD

"The Federal Rules of Civil Procedure do not explicitly authorize a motion for reconsideration. However, a litigant subject to an adverse judgment, and who seeks reconsideration by the district court of that adverse judgment, may 'file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b).'" *Cleveland v. Auto-Owners Ins. Co.*, No. 20-CV-00676-CMA-NRN, 2022 WL 1090548, at *2 (D. Colo. Mar. 31, 2022) (quoting *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)). Here, Defendant has expressly moved under Rule 60(b)(1). (Doc. No. 72 at 1.) Rule 60(b)(1) allows a court to relieve a party "from a final judgment, order, or proceeding," on a showing of:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> …
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60. "Rule 60 relief is discretionary and is available only 'when circumstances are so unusual or compelling that extraordinary relief is warranted or when it offends justice to deny such relief.'" *Cleveland*, 2022 WL 1090548 at *2 (quoting *Johnson v. Ward*, No. 20-cv-00447-PAB-MEH, 2021 WL 2222713, at *1 (D. Colo. June 2, 2021)). On appeal from a denial of a motion for reconsideration, the standard of review is abuse of discretion, and the Tenth Circuit

2

"has followed other jurisdictions in declaring that Rule 60(b) is an extraordinary procedure[.]" *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (citing *Brown v. McCormick,* 608 F.2d 410, 413 (10th Cir.1979)). A court abuses its discretion if its decision "is arbitrary, capricious or whimsical." *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). A lower court's decision will stand unless, "no reasonable [person]" could agree with the district court. *Beshear v. Weinzapfel*, 474 F.2d 127, 134 (7th Cir. 1973). "If reasonable [people] could differ as to the propriety of the action taken by" the Court, there is no abuse of discretion. *Id*. "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Cleveland*, 2022 WL 1090548 at *2 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988) (REHNQUIST, C. J., dissenting)).

## ANALYSIS

Defendant argues that "the Court made inadvertent mistakes of law and fact," in three respects. *First*, it argues that "the Court neglected to impose the requisite burden of proof on Plaintiff pursuant to Colo. Rev. Stat. § 13-21-503," when it held "that the jury may conclude the firearm was defective based on circumstantial evidence alone," because "Plaintiff can never meet his burden of proof" without "an expert to opine on design or manufacturing issues[.]" (Doc. No. 72 at 2.) *Second*, Defendant argues that "[w]ithout stating it explicitly, the Court appears to have applied the malfunction theory to save Plaintiff's manufacturing defect claim. However, the malfunction theory only applies where direct evidence is unavailable, and typically when the product is missing or has been destroyed." (*Id.* at 2-3.) *Third*, "the Court made a mistake of fact when it credited, and seemingly relied upon, a false statement made by Plaintiff's expert that he

was purportedly 'precluded from doing a drop test of this firearm by Kahr's attorneys[.]'" (*Id.* at 3 (quoting Doc. No. 71).) The Court will address each argument in turn.

I.  **Burden of Proof Under Colo. Rev. Stat. § 13-21-503**

In considering Defendant's argument that C.R.S. § 13-21-503 "mandates more than circumstantial evidence," (*id.* at 2), the Court begins its analysis with the plain language of the statute. *See Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004) ("If a statute is clear and unambiguous on its face, then we need not look beyond the plain language, and 'we must apply the statute as written.'" (internal citations omitted)). The relevant statutory language reads as follows:

> In a product liability action, whether a firearm or ammunition shall be deemed defective in design shall not be based upon its potential to cause injury, damage or death when discharged. The burden shall be on the plaintiff to prove, in addition to any other elements required to be proven…[i]n a product liability action alleging a defect in manufacture, that the firearm was manufactured at variance from its design and that such defective manufacture was the proximate cause of the injury, damage, or death.

C.R.S. § 13-21-503. The statute says nothing about modes of proof. In other words, the plain language of the statute, which requires a plaintiff to prove "that the firearm was manufactured at variance," says *what* a plaintiff must prove, but it does not say *how* a plaintiff must prove it. Indeed, in other contexts courts have held that "in determining the sufficiency of evidence, the law makes no distinction between direct and circumstantial evidence." *People v. Buckner*, 2022 COA 14, ¶ 83, 509 P.3d 452, 467, *cert. denied*, No. 22SC157, 2022 WL 17753852 (Colo. Dec. 19, 2022); *see also Cleveland v. Ampco Sys. Parking, Inc.*, No. CIVA06CV01855WDMBNB, 2007 WL 2909407, at *2 (D. Colo. Oct. 2, 2007) (denying summary judgment because plaintiff's evidence permits inferences in support of a finding that the step was defective, and the fact "[t]hat Plaintiff's evidence is indirect does not preclude

a jury from finding that [defendant] breached its duty of care"); *see* Colo. Jury Instr., Civil 3:8 (4th ed.) ("The law makes no distinction between the effect of direct evidence and circumstantial evidence."). In arguing that the Court failed to apply the correct burden of proof under C.R.S. § 13-21-503 because the statute "mandates more than circumstantial evidence," and "an expert to opine on design or manufacturing issues," (Doc. No. 72 at 2), Defendant is essentially asking the Court to read a new requirement into C.R.S. § 13-21-503—one that is not called for by the plain language of the statute, or any other law. The Court will not do that.

The Court also does not agree with Defendant's reading of *Hauck v. Michelin North America, Inc.*, 343 F. Supp. 2d. 976 (D. Colo. 2004). That case concerned a multi-vehicle traffic accident, which plaintiff argued was caused by "the tire tread separation." *Id.* at 979. Plaintiff's expert sought to opine that the "tire delaminated due to an 'adhesion defect,' meaning something was wrong with the way the layers of the tire were 'bonded' together." *Id.* However, the expert admitted that he could not "specify the precise cause of the adhesion defect," and that he was "not an expert in tire design or tire manufacture." *Id.* The Honorable Phillip S. Figa excluded the expert, but plaintiff argued the defect claims should nevertheless proceed to the jury because even without an expert, plaintiff could still offer "the *plain fact* that the tire blew." *Id.* at 988. Judge Figa rejected that argument. He held that "[w]ithout the opinions of [the expert], plaintiff has no relevant evidence that the Michelin X tire was defective[.]" *Id.* In so holding, Judge Figa distinguished the facts of the *Hauck* case from other cases and found that plaintiff's evidence was not "sufficient to avoid summary judgment in *this* case." *Id.* (emphasis added). In other words, Judge Figa did not articulate a *per se* rule that circumstantial evidence could *never* be

used to satisfy a plaintiff's burden of proof. He merely found that in that particular case, and under those particular circumstances, plaintiff's evidence was insufficient.[2]

Additionally, to the extent the *Hauck* court addressed the utility of circumstantial evidence, generally, it did so only to distinguish plaintiff's cited cases. *Hauck*, 343 F. Supp. 2d. at 987-88. Indeed, Judge Figa acknowledged that the decision to permit circumstantial evidence depends on the facts of a particular case. *Id*. at 988 ("While it is correct that the *Union* and *Oja* opinions state that a plaintiff may prove a manufacturing defect by circumstantial evidence, it is apparent to this Court that those statements are based on the particular factual situation that existed in each case, and do not supply a rule for general application."). Judge Figa went on to distinguish the *Hauck* case from other cases where "there was other evidence offered by the plaintiff …." *Id.*

This case is less like *Hauck* and more like other cases Judge Figa referenced where there was "other evidence." First, there is Plaintiff's own testimony. Second, Plaintiff's expert points to various forms of evidence to support his conclusion that the pistol discharged upon striking the ground. And third, Defendant's own experts appear to agree with—or at least offer some support for—the theory that if the pistol discharged when it hit the ground, it was not operating as it should have operated. (*See* Doc. No. 61-4 at 8, 11-13 (where the Defendant's expert opines that, "[t]hroughout all of the exams, the pistol performed as it was designed and expected. At no time did the pistol malfunction or discharge absent a full and contemporaneous actuation of the trigger[,]" and "[t]o properly investigate if the Kahr PM 45 pistol was prone to drop fires, formal

---

[2] A distinguishing point between *Hauck* and this case is that in *Hauck*, plaintiff's expert was excluded. Here, plaintiff's expert will be allowed to testify at trial and Defendant is not asking this Court to reconsider that portion of its Order. (Doc. No. 71 at 9-15.)

SAAMI drop, California drop and incident reconstruction drops were performed by Mr. Michael Shain and myself on multiple pistols….All of the physical abuse testing conducted by myself, Mr. Shain and Mr. Paradis showed the Kahr PM 45 is robust against drops."); Doc. No. 61-5 at 18 ("It is widely recognized that a discharge from drop on the rear of the slide of a semi-auto pistol will result in the expended round being captured/retained in the chamber because the slide will transfer the energy form the discharge into the impact surface and the slide will not cycle.").) Said another way, Plaintiff offers more than the "plain fact" of discharge. *See Hauck*, 343 F. Supp. 2d. at 988. And determining which version of the events is true—Defendant's version, where the gun discharges near Plaintiff's body, or Plaintiff's version, where the gun discharges from the ground—is a determination of fact for the jury.[3]

      At a minimum, relief from the Court's summary judgment order is unwarranted because reasonable people could disagree on the question of whether a plaintiff may meet his or her burden with circumstantial evidence. *Beshear v. Weinzapfel*, 474 F.2d at 134. This is reflected in the Honorable William J. Martinez's well-reasoned decision in *Olivero v. Trek Bicycle Corporation*. 291 F.Supp.3d 1209 (D. Colo. 2017). There, Judge Martinez found a manufacturing defect could indeed be proved by circumstantial evidence. *Olivero*, 291 F. Supp.3d at 1218-23. The Court finds it persuasive that Judge Martinez's analysis in *Olivero* considers the *Hauck* decision and carefully explains why the Colorado Supreme Court would permit circumstantial evidence of a manufacturing defect. *Id.*; *see id.* at 1220, 1221 (saying "[t]he Court agrees with the Oliveros that the Colorado Supreme Court would likely adopt" the

---

[3] In this sense, Plaintiff's alleged "circumstantial evidence" is not circumstantial at all because he offers direct proof of his version of the events.

*Restatement (Third) of Torts: Product Liability* § 3 (1998), which says "[i]t may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect").

The Court also disagrees with Defendant's argument that evidence of a manufacturing defect necessarily requires expert testimony. (Doc. No. 72 at 6 ("Plaintiff needs, but does not have, an expert to establish an essential element of his manufacturing defect claim.").) In support of this argument Defendant again relies on *Hauck*, as well as *Fisher v. BMW*. *Hauck*, 343 F. Supp. 2d 976; 2020 WL 5798526 (D. Colo. Sep. 29, 2020). But those cases do not stand for the proposition that plaintiff must *always* have an expert. In *Hauck*, the court held only that "the plain fact that the tire failed or delaminated" was insufficient to survive summary judgment in *that* case.[4] *See Hauck*, 343 F. Supp. 2d at 988. And in that case, the court excluded the expert and plaintiff was left with no other defect evidence. The same is true in *Fisher*, where plaintiff's only evidence would have come in through the disqualified expert. *Fisher*, 2020 WL 5798526 at *3 ("Plaintiff does not argue that any evidence other than Dr. Lalley's opinions could establish a design defect[5] so as to create a genuine issue of material fact for trial.") Moreover, and as the *Olivero* court noted, "historically the Colorado Supreme Court has rejected arguments that would

---

[4] As noted above, the analog to *Hauck* in this case would be if the gun discharged while holstered and Plaintiff offered nothing more than the plain fact of discharge to prove a defect. That is not the case. Here, Plaintiff offers evidence that the gun did not discharge while holstered, but rather that it fell out of the holster and onto the ground and discharged on impact. Additionally, Defendant's own experts offer opinions that suggest this pistol—if properly manufactured—should not discharge on impact.

[5] *Fisher* is also a design defect case, not a manufacturing defect case and the Court has already dismissed the design defect. (*See* Doc. No. 72 at 10 n. 5 (stating the "design defect claim" is "is no longer at issue here").)

8

make expert testimony a necessary part of plaintiff's case." *Olivero*, 291 F.Supp.3d at 1221; *see also Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1398 (10th Cir. 1997) ("It is clear that in many states circumstantial evidence, whether expert or not, may support a manufacturing defect claim." (citing *Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1392 (10th Cir. 1987) (interpreting Colorado law)).

## II. Malfunction Theory

Defendant next argues that the Order improperly and implicitly adopts the so-called malfunction theory, which Defendant asserts the Colorado Supreme Court has never adopted. (Doc. No. 72 at 6-11.) In footnote 1 of its brief in support of the Motion, Defendant cites a law review article that says the following about the theory:

> Under the malfunction doctrine, a plaintiff may establish a prima facie case of product defect by proving that the product failed in normal use under circumstances suggesting a product defect. Put otherwise, a product defect may be inferred by circumstantial evidence that (1) the product malfunctioned, (2) the malfunction occurred during proper use, and (3) the product had not been altered or misused in a manner that probably caused the malfunction. The malfunction doctrine may be described less formally as providing that a plaintiff need not establish that a specific defect caused an accident if circumstantial evidence permits an inference that the product, in one way or another, probably was defective.

David G. Owen, *Manufacturing Defects*, 53 S.C. L. REV. 851, 873–74 (2002) ["Owen Article"].

As a threshold matter, the Court is not convinced that the Colorado Supreme Court would never adopt the malfunction theory. The Owen Article cites two Colorado cases that appear to apply the malfunction theory, or at least its factors, without necessarily calling the theory by its name. *Id.* at 875 n. 157, 876 n. 158 (citing *Union Ins. Co. v. RCA Corp.*, 724 P.2d 80 (Colo. App. 1986), *disagreed with on other grounds by Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198 (Colo.

1992); *Weir v. Fed. Ins. Co.*, 811 F.2d 1387, 1392-93 (10th Cir. 1987)) (applying Colorado law)).

In *Union Insurance Co.*, the court found that a defect claim could go to the jury based on expert testimony that the fire started in the specific location of the television, and based on evidence that from the time the user unpacked the television from its carton, he used it in a manner was normal and not abusive. *Union Ins. Co.*, 724 P.2d at 82-83 *disagreed with on other grounds by Mile Hi Concrete, Inc.*, 842 P.2d 198.

Then in *Weir*, which relied in part on *Union Ins.*, the Tenth Circuit found the jury could infer a defect where "plaintiff has introduced evidence that would exclude other causes of the accident." *Weir*, 811 F.2d at 1392. And although the *Weir* court did not walk through the malfunction doctrine factors, the Owen Article nevertheless cites it as an example of a Colorado court applying the malfunction doctrine. *Owen*, 53 S.C. L. REV. at 876-77 (citing *Weir* for the proposition that "[i]n addition to automobiles, the [malfunction] doctrine has been applied to malfunctions of a wide range of other products," including "a clothes dryer").

Here, the Court did not apply the malfunction theory, but even if it had, *Union Ins.*, and *Weir*, suggest it would not have been in error. Additionally, *Hauck* does not require a different result. First, this Court is not bound by district court decisions. *LNV Corp. v. Hook*, No. 14-CV-00955-RM-CBS, 2015 WL 6153291, at *2 (D. Colo. Oct. 20, 2015) ("[T]he Magistrate Judge is not bound by a decision issued by another federal district court judge sitting in the same district[.]"). Second, and contrary to Defendant's assertion, *Hauck* does not "hold direct proof is required to prove a product defect unless direct proof is impossible because it is missing or destroyed." (Doc. 72 at 7 (purporting to paraphrase *Hauck*).) Instead, Judge Figa made a fact-

10

specific determination that without experts, the plaintiff in *that* particular case, lacked sufficient evidence to proceed to trial. *Hauck*, 343 F. Supp. At 988 ("Without the opinions of [his expert], plaintiff has no relevant evidence that the Michelin X tire was defective at any time, or specifically that it failed due to a manufacturing defect[.]").The *Olivero* court reached a different decision based on a different set of facts. *Olivero*, 291 F. Supp. 3d at 1224 (finding that the plaintiff had presented sufficient relevant evidence to survive summary judgment without direct evidence of a manufacturing defect even when the allegedly defective product was not destroyed).[6]

So too, here. Based on the specific facts and circumstances of this case, the Court finds Plaintiff's evidence—which may or may not be sufficient for a jury to find in his favor—is at least sufficient to survive summary judgment. A jury could conclude—based on Defendant's own expert testimony, Plaintiff's expert testimony, the physical evidence in the case, and Plaintiff's own testimony—that a properly operating pistol should not have discharged on impact, and that it did indeed discharge on impact here. In determining whether or not Plaintiff has met his burden to establish that the discharge was more likely than not the result of a defect (rather than misuse), the jury will need to weigh the evidence, assess the credibility of witnesses, and make factual determinations.

### III.  Drop Testing

Finally, Defendant argues that the Court was misled by Plaintiff's contention that he was not permitted to drop test the subject pistol. The import of this assertion appears to be driven by

---

[6] In so doing, the *Olivero* court considered *Hauck* and assessed the likelihood that the Colorado Supreme Court would allow circumstantial evidence.

Defendant's argument that circumstantial evidence may not be used to prove a manufacturing defect unless direct evidence is unavailable. However, as set forth above, the Court disagrees with that premise. The Court does not read *Hauck* to "hold direct proof is required … unless direct proof is impossible because it is missing or destroyed." (Doc. 72 at 7.) Instead, the Court reads *Hauck* as holding that circumstantial evidence may be sufficient in some cases and insufficient in others.

Thus, the Court need not decide whether drop testing was actually precluded, because even assuming the lack of drop testing was by choice, the Court's decision would not change. Defendant's evidence may very well tip the scales in its favor at trial, but the Court will not read new limitations into the applicable statute, or construe case-specific decisions as broad *per se* rules in order to pluck this decision from the jury's hands and place it into the Court's hands.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

(1) Defendant's Motion for Relief from an Order Pursuant to Rule 60 of the Federal Rules of Civil Procedure (Doc. No. 72.)) is **DENIED**.

(2) A **status conference** is **SET** for **May 9, 2023,** at **11:00 AM**. The Status Conference will be conducted by video. Please see the attached instructions for appearing at the conference by video feed.

Dated this 6th day of March, 2023

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge

# Cisco Meeting App Instructions

# Judge Dominguez Braswell

- For laptop/PC - From Google Chrome (recommended) on Windows, or Safari on Mac or iDevice, click on the link below to join.  **IMPORTANT:  Contact Chambers or Courtroom Deputy prior to testing this link, as you may interrupt a scheduled setting:**

    https://meet.uc.uscourts.gov/meeting/617286044?secret=sP.qIkX5dlWqFdXAEJ_Zgg

    **Note:  Use the default of "Continue with browser" to join the meeting.**

- For VTC/SIP Systems:

    2221100@uc.uscourts.gov  Meeting ID- 617286044#

- For Audio Only:

    - Phone: 571-353-2301, then enter 617286044

- **Once you have joined the conference either by Video or Audio, please MUTE YOUR MIC.**

    <u>Family Member/Public/Media "listen" to hearing:</u>

    Toll Free: Unassigned at this time
    Access Code: Unassigned at this time#